UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

Case No. 24-20527

Hon. Mark A. Goldsmith

DANIEL BIHN,

    Defendant.
_____/

# GOVERNMENT'S SENTENCING MEMORANDUM

Daniel Bihn conspired with others to steal personal, private images of unsuspecting women for his co-conspirators' enjoyment and, in some instances, where those images had been posted for the whole world to access without the knowledge or consent of the victims. For the reasons discussed below, the United States asks the Court to impose a sentence that does not exceed the midpoint of Bihn's guideline range, and order Bihn to pay restitution. Such a sentence would be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

1

I.   Facts and Procedural History

   A.   The Offense

On August 17, 2020, the FBI received information from a person (AV-1), who lived in Illinois, about a group of individuals posting images of nude and semi-nude photographs of females, some of whom were minors at the time the images were taken, on the anonymous image board website, AnonIB.ru.  This group of individuals focused on images of women who formerly attended a high school in the Eastern District of Michigan.  AV-1 provided information indicating that some of the women had their social media and cloud storage accounts accessed without their permission to obtain the images that were posted. In addition, at least one of the women appeared to have been threatened to produce additional images.

In August 2020, an FBI agent in Detroit reviewed the AnonIB.ru webpage. The agent's review showed that the website's primary purpose appeared to be the anonymous posting of images, with organization by country, region, or state, and then further specificity, often a specific school, zip code, or area code. The agent located the threads reported by AV-1 and confirmed those threads contained numerous images of nude

2

or semi-nude women interspersed with comments made by anonymous users, which requested more images of the women previously posted, requested an unposted woman's images, or discussed the identity of the woman in the image posted previously.

Most of the posters used what appeared to be the default username: "Anonymous;" however, some chose a unique username. Many of the posts in the threads associated with the particular high school referenced by AV-1 were from the users with usernames "ΔS," or a variant thereof, or "VZ," or a variant thereof.

In an August 19, 2020 interview, AV-1 told agents that she found out about the website days prior from another victim (AV-7), who told AV-1 that there were images of her posted there. AV-1 found four images of herself posted, in which she was nude or semi-nude, and all the images were taken using Snapchat. AV-1 said that she had only sent the posted images to her boyfriend at the time and no one else. The posts of AV-1 were posted by the username "VZ," later identified as Michael Justus.

On August 24, 2020, the FBI agent interviewed AV-2, who lived in the Eastern District of Michigan. AV-2 found out about the website on

3

August 14, 2020, from AV-1. When she reviewed the website, AV-2 found three nude images of herself. The post had been made by username "Triangle Guy," a variant of "ΔS," (later identified as Daniel Bihn) on June 24, 2020. AV-2 took the images of herself about two years before using Snapchat and stored them in the "My Eyes Only" section of the application, which requires an additional passcode to access. AV-2 only sent them to one person at the time she took them. But AV-2 also reported that she received at least three notifications from Snapchat regarding unknown logins to her Snapchat account, at least one of which came from a Google Pixel 2 telephone, the same type of phone used by Bihn.

On August 26, 2020, the agent contacted and interviewed AV-8, who lived in the Eastern District of Michigan. AV-8 said a photo of her was posted in 2017 on the website and reported to the police. This image was saved in Snapchat and never sent to anyone. Like AV-2, on three occasions in 2016 and 2017, AV-8 received notifications that someone had tried to login to her Snapchat account. AV-8 deleted the image from her Snapchat account in 2017 after the initial posting. The

4

same image of her with her exposed breasts was reposted on June 10, 2020, by "Anonymous."

AV-3 was interviewed on August 31, 2020. AV-3 lived in the Eastern District of Michigan and said she found out about the website in February 2020 when she heard some of her friends' images had been posted there. In June or July 2020, she heard that there were images of her posted. AV-3 reviewed the website and found semi-nude images of herself, where some of her friends were also depicted semi-nude. The posted images were taken when AV-3 and her friends, including AV-4, were on a trip to Miami, Florida in May of 2018. AV-4 had taken most of the images using Snapchat. AV-3 saw a post in which the poster claimed to have access to her Snapchat account, but the poster then later said that AV-3 had changed the password. AV-3 received messages on Instagram from a username "mapas847," asking for additional nude images and included some of the photos that had been posted on the website. The posts of AV-3 were created by Bihn, Justus, and "Anonymous." The poster who claimed to have AV-3's password and later posted a semi-nude image of her used the default username "Anonymous."

5

On September 1, 2020, the FBI agent interviewed AV-4, who also lived in the Eastern District of Michigan. During the interview, AV-4 said her Snapchat account had likely been hacked around March 2020 after she provided a password to her personal trainer and her personal trainer told her that her account had been hacked. About one month later, AV-4 tried to login to her Snapchat account, and she could not. A friend messaged AV-4, saying she had received a message from AV-4's account asking for her password. After resetting her Snapchat password, AV-4 saw messages to six of her friends asking for their passwords. Around August 2020, AV-4 received a message from a friend telling her that there were images of her posted on the AnonIB.ru website. AV-4 looked at the website and confirmed the images had been in her Snapchat account. These were the same images as described by AV-3 above. AV-4 also received some "weird" messages on Instagram from username "mapas847," but blocked the account. The posts of images of AV-4 were found to have been made by username "ΔS" (Bihn) or "Anonymous."

On September 2, 2020, the FBI agent interviewed AV-5, who lived in the Western District of Michigan. Like the other victims, AV-5 found

out about Anon.IB.ru, reviewed it, and found an image of herself. This happened around April 2020. The image was from her Instagram account and taken in April 2017 when she was 17 years old. In the original image, AV-5 was wearing a bathing suit; but, the posted image had been manipulated to make it look like she was nude. The image was posted by username "Anonymous" who stated in the post: "Fakes but best I got." Later, in October 2020, AV-5 reported that a Google Pixel 2 (the same kind of phone as Bihn) was used to attempt to login to her Snapchat and Gmail accounts.

### B.   Members of the conspiracy

The FBI subpoenaed the Snapchat and associated email accounts of the victims described above to obtain IP log information for these accounts. The IP logs showed that at least the Snapchat account of AV-2 and AV-4, and the Google account of AV-2, were accessed by IP addresses associated with Bihn's phone and residence. Thus, posts of the images of AV-2, AV-3, and AV-4, and the associated hacking into the Snapchat accounts, were linked to Bihn.

A January 14, 2021 federal search warrant execution at Bihn's residence led to additional information. Multiple electronic devices were

seized during the execution of the warrant. Investigators learned that Bihn had been invited to a group on Discord, another messaging application, where people would post additional nude images of women who had attended the particular high school in the Eastern District of Michigan. Another user in that group, "vz_br" (Justus) reached out to Bihn and invited him to a more private group where Bihn, Justus, and Rice shared with each other nude images of women they knew, many of which they had unlawfully obtained.

Ultimately, the investigation showed that Bihn was the most skilled at hacking into people's social media accounts without the user's consent or knowledge. Rice and Justus would share lists with Bihn of women who went to the high school during a particular time frame that they wanted to Bihn to hack to obtain images.

On June 22, 2021, law enforcement executed a search warrant in the Northern District of Illinois at Justus' residence. Justus agreed to be interviewed and provided consent to search his Discord account. That account contained a chat between Justus and Rice that took place between February 12, 2019, and December 26, 2020. The conversation primarily focused on the scheme of obtaining and sharing nude images

8

of women that the two knew in real life.

Other times during the conversation, Rice discussed knowing that Bihn was a hacker and the two talked about images of certain victims and storing images on drives. On August 14, 2019, Justus and Rice discussed a list put together by Rice for Bihn to obtain images:

<pre>
Justus:   very interested to see your list and see
          if there's any blatant misses on my
          end
Rice:     mines not extensive at all; jus got
          aroudn to it lol
Justus:   lol lemme check dis shit; [nickname of
          potential victim], hell yeah lol;
          underrated [name of potential victim]
          but she's cute; nice add
Rice:     good stuff
Justus:   [name of potential victim] fuck, yeah
          didnt think of her
</pre>

Discord records also showed on June 15, 2021, Rice knew about Bihn and Justus' activity on the AnonIB board, saying to Justus: "i didn't have that [identified victim's name] *ss pic you posted in anon; lmao good shit." The two then discussed Justus' plans with Bihn to get people to post more nude images on the AnonIB website, with Justus saying, "delta and i were talking that i can monitor the board and tease people when they deserve it; but no response to his [identified victim's name] post all weekend; not gonna give the crowd anything until they

9

contribute." Further, Discord records showed Rice asking on June 18, 2021, for images of a specific potential victim. Rice asked: "Any chance you have this girl? she used to date one of my friends and had a huge *ss?" He then provided the URL to the Facebook account of the potential victim. Lastly, Discord records showed on October 6, 2020, after Justus asked if Rice has any new images of females recently, he responded: "few new [name of potential victim] on my home computer.

### C. Information and Plea

On September 23, 2024, an Information was filed charging Bihn, Rice, and Justus with crimes relating to computer fraud. Bihn was charged with conspiracy to commit fraud and related activity in connection with computers (Count 1), in violation of 18 U.S.C. §§ 1030(a)(2)(C), (b), and (c)(2)(B)(ii). On August 27, 2025, Bihn pled guilty pursuant to a Rule 11 agreement to Count 1 of the Information.

## II. Relevant 18 U.S.C. § 3553(a) Factors

### A. The Sentencing Guidelines Range

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) in fashioning an appropriate sentence. As noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it

10

is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

The United States Probation Office calculated Bihn's criminal history category to be I and offense level to be 4, resulting in a sentencing guideline range of 0 to 6 months imprisonment. PSR ¶ 81. The statutory maximum term of imprisonment for Count 1 is five years. For the reasons set forth below, the United States asks that the Court impose a sentence within the guidelines, and order Bihn to pay restitution to in the amount of $4,079.93 to AV-2 and $2,000 to AV-3.

### B. Nature and circumstances of the offense and history and characteristics of Bihn, 18 U.S.C. § 3553(a)(1)

The nature and circumstances of Bihn's offense call for a sentence that does not exceed the midpoint of his guideline range. Bihn worked with Rice and Justus to violate the privacy of multiple victims in the worst way, all for their own amusement and gratification. The group conspired to obtain images from the Snapchat accounts of women with whom they had attended high school, and then to share those intimate images amongst themselves or with the world on an anonymous Russian website. The women did not consent to, and did not even

11

realize, what was happening. Further, Bihn was the person in the conspiracy who had the skills to complete the task.

Like the nature and circumstance of his offense, Bihn's personal history and characteristics also call for a sentence that does not exceed the midpoint of the guideline range. Bihn experienced a privileged upbringing. He has no prior criminal history. Further, at the time he committed the offense, he was educated and has been gainfully employed. To his credit, Bihn has expressed an interest in continuing his education and obtaining a bachelor's degree, which he did not complete because he was offered a job that did not require the degree. However, Bihn has a serious history of substance use and abuse, to the extent that alcohol abuse likely played a role in the commission of the instant offense. The sentence in this case should acknowledge Bihn's lack of criminal history, his education and employment history, substance abuse, but also balancing the traumatic, invasive nature of his offense.

### C. Seriousness of the Offense, Adequate Deterrence, and Protecting the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)

A sentence that does not exceed the midpoint of Bihn's guidelines as calculated by the Court at sentencing would also reflect the

12

seriousness of the offense and provide adequate deterrence. One measure of the seriousness of Bihn's offense can be taken by considering the impact his actions have had on his victims. In a victim impact statement provided to the Probation Department, AV-2 stated:

> *When I found out my private photos had been posted online, I began having daily panic attacks multiple times per day, could not leave my house, had to start weekly therapy, ... I am still working through this trauma to this day...*

PSR ¶ 30. AV-3 also provided a victim impact statement where she also described the impact that the offense conduct has had on her life:

> *Defamation of character as well as exposure of privacy, invasion of privacy and personal information led to emotional trauma and damage.*
> *…*

*Id.* AV-3 also discussed the unexpected cost for therapy that she required following the events in this case. The sentiments expressed in these statements underscore the seriousness of Bihn's offense by highlighting the tangible emotional trauma, as well as practical inconveniences suffered by the victims.

    The offense committed by the co-conspirators in this case is very serious because in this digital age, many people, like the victims here, keep their most private information stored on phones or within the

13

password-protected servers of various companies; a fact which the defendants exploited to access information that did not belong to them.

The sentence in this case should send a message to Bihn and to others who have or would seek to engage in this behavior that courts take these offenses seriously and will impose punishments consistent with the gravity of the offense.

### D. The Need to Provide Restitution, 18 U.S.C. § 3553(a)(7)

The provisions of the Mandatory Victim Restitution Act of 1996 apply in this case. Victims AV-2 and AV-3 provided requests for restitution related to counseling services they sought because of being a victim of Bihn's offense. As part of the sentence in this case, the Court should order Bihn to pay $4,079.93 for monetary losses she suffered because of his and his co-conspirators' offense. The Court should also order Bihn to pay AV-3 $2,000, for the losses she suffered. Because one of the ways to make the victims whole in this case is through ordering mandatory restitution, the Court should heavily weigh this factor when determining its sentence.

## III. Conclusion

For the above-stated reasons, the United States asks the Court to

impose a sentence not to exceed the midpoint of Bihn's guidelines that the Court calculates at sentencing and order Bihn to pay restitution to AV-2 and AV-3 in the amounts of $4,079.93 and $2,000, respectively.

          Respectfully Submitted,

          JEROME F. GORGON, JR.
          United States Attorney

          *s/Tara Hindelang*
          Tara Hindelang
          Assistant United States Attorney
          211 W. Fort Street, Suite 2001
          Detroit, MI  48226
          (313) 226-9543
          tara.hindelang@usdoj.gov

Dated:  January 21, 2026

**Certificate of Service**

I certify that on January 21, 2026, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification to all counsel of record via email.

                                            *s/Tara Hindelang*
                                            TARA HINDELANG
                                            Assistant United States Attorney